Kind of lonely over there compared to that table. You can borrow somebody from the audience you want to balance out. When I was a an AUSA years ago I had this case against these prisoners who were filing false tax returns and they brought them all in and it was all ten of the prisoners, ten lawyers on that side and it was just me over there as the AUSA and I just felt like you know what am I against 20 of them. You may not want to feel that way so anyway a little war story. All right go ahead you're good to go. Not a single plaintiff has shown that his or her right to vote was abridged or substantially burdened by SB 14 and the district court found that at least 95.5 I mean I just want to understand is it irrelevant if you have to jump through a bunch of hoops, you have to go down and get your birth certificate and take the bus and all that, come back and do this and go through three or four hoops and finally you get everything you need and you go vote but others might get discouraged along hoop number three. Is that irrelevant to the consideration of this issue? No it's not irrelevant. It's relevant to an as-applied Crawford challenge but as Crawford said you still need concrete evidence of that burden and the fact that 95.5 percent of Texas voters as a district court found have SB 14 compliant IDs rejects the facial challenge and then we're just focused on the as-applied challenge but on their as-applied. Because there's one other one and that is if it was enacted with the discriminatory purpose then that's a problem right? That's right. And you still have your facial challenge even if only five percent or whatever the number is of the of the voters are affected. That's right the 95.5 percent figure knocks, it would defeat the facial unconstitutional burden on the right to vote. You'd still have the discriminatory purpose claim and just to back out a little bit there are four primary claims here. There's a poll tax claim, there's a Crawford unconstitutional burden claim, there is the discriminatory effect claim and discriminatory purpose claim. Now the points I was just discussing about the 95.5 percent and the as-applied Crawford challenge go to the unconstitutional burden claim and to drill down a little bit on that claim, plaintiffs anecdotes here, our reply brief at pages 12 to 14 rebut that they have any burden on the right to vote. Most of them, virtually all of them are able to vote without photo ID by mail and what plaintiffs are trying to do is take the testimony of the difficulty of those more older voters and then try to generalize out that there is then difficulty for those younger than 65 and other types of voters but they need concrete evidence under Crawford to be able to show that because Crawford itself even had deposition testimony. There were multiple depositions from a homeless shelter worker, there were a series of depositions from the elderly and Crawford said you need to show a concrete burden and here the plaintiffs on that claim haven't. To turn to the discriminatory purpose claim, even under the fact findings that the district court made, an inference of discriminatory purpose cannot be made on this record. Okay, let me just ask you about this Representative Smith comment which we should have made the other team join in one brief because it ended up being very repetitious but we heard about Representative Smith about ten times which is that he said it's just common sense that this is going to burden minorities. Why isn't that a real problem for you on discriminatory purpose? Even if he's wrong, you said well Representative Smith was wrong. Well I don't care if he's wrong, I care what he was thinking. If his purpose is bad, whether he's wrong about the effect or not, that's a problem, right? Well Judge Haynes, what Feeney said was that the discriminatory purpose inquiry is more than intent in the typical criminal and civil context. In other words, an intent that you have awareness of consequences is not enough and at most Representative Smith's comment only shows that he was aware of consequences which as your Honor notes actually didn't turn out to be the case and so what the plaintiffs have to show is the clearest proof that the Texas legislature acted to suppress minority voting and that is not on this record at all. McCleskey. I want to ask you this because you know we know that discrimination still exists. We know that there are people still sadly who discriminate. We also know though that that's much more in the shadows than it was maybe 50 years ago in terms of people are going to be less overt about it and less coming out and saying this is why I'm doing something. So how do you prove, what would you be looking for here? They're not gonna get on the floor of the Texas House or something and say hey let's suppress minority voting. Oh that sounds like a good idea. That isn't going to happen. Okay. What would you expect to see that you would then say yes that can support the fact-finding the district court made? Well two points Judge Haynes. First of all the Supreme Court said in McCleskey was where there are legitimate reasons for the legislature to adopt and maintain a law then the court will not infer discriminatory purpose and here even the district court admitted and Crawford said there are legitimate reasons. In fact the testimony by the legislators, the direct statements shows that this was done to deter voter fraud and preserve voter confidence. Our brief cite tens of examples of that. Our brief at page 38 and our reply brief at page 44. But even on this particular record the plaintiffs don't dispute the district court gave the plaintiffs unprecedented discovery into the documents and the impressions of the supporters of SB 14. Thousands of documents and not a single document showed an intent or a purpose to suppress minority voting and as this that the logic of the Supreme Court's opinion in Arlington Heights suggests that direct evidence, direct statements is actually stronger than the circumstantial evidence when you have the direct evidence because what Arlington Heights said was you normally shouldn't pierce the legislative privilege into the minds of legislators. Of course that was allowed here. And how are you ever going to prove I mean this is why I'm having trouble with proving discriminatory purpose because we know that there could be that could happen I mean really our country has not risen above that fully okay. I'd like to think we've made progress but I don't think we're quite there. So that being the case I mean again it's unlikely somebody's just going to get up and say something overtly you know let's go discriminate in the middle of some debate in the House or Senate. So what is it you seem to be looking for somebody confessing in an email let's discriminate but I mean even there you would probably argue it's just that one guy and we had you know a hundred people vote for it or whatever the numbers were. Well first of all the Supreme Court has said that you need clearest proof and there can't be legitimate reasons and where those are there. So if there's a legitimate reason that one can proffer then that's the end of it. We're done with discriminatory purpose we need to move on to something else. You would look at the direct statements that the legislators made to see if there was any inference that could be drawn from those but even here even under the circumstantial evidence which is not circumstantial evidence of discriminatory purpose but here the District Court mainly focused on opponents of SB 14 statement the historical background and the legislative history if I can take those three points in turn. First of all on the opponent's statements the District Court first of all ignored favorable statements for the defendants. Also these aren't relevant of the decision makers intent of the actual SB 14 legislature that passed the bill and third most of these statements were not even contemporaneous with SB 14. I'm not sure you're completely responsive and maybe you're made your best shot to the question. I mean although this is a voting rights case it's in the whole umbrella of proven discrimination and as Judge Haynes said absent some email somebody didn't mean for somebody to see or whatever whatever. We all know it's Hornbook if you've got direct evidence you know that's the best thing going but whether we're talking about employment discrimination whatever kind of discrimination it's rarer that there's direct evidence. There's direct evidence we don't see the case you know people settle it it goes away. So strong circumstantial evidence is just kind of the lay of the land in any kind of a discriminatory milieu proven cases and you don't dispute that. So back to it is it the answer you know it's proven a negative if you don't show direct something virtually impossible to show King's X. I mean we all know what McCleskey said and in any of these employment cases you know if you've got direct evidence you got to put it on but if it's not there is at the end of the story. I don't think McCleskey takes this completely out of what we know in proving up or not proving up discrimination that direct you either have direct evidence or you have nothing. Well Chief Judge Stewart for instance here the circumstantial evidence of for instance the historical background. The Texas legislature enacted this against the background of Crawford and the Carter Baker Commission in Congress blessing photo voter ID laws and saying that these are legitimate policies in the legislative history polls suggested in 2009 2010 and 2011 that these policies were overwhelmingly favored by Texans and those split across partisan. Well again what's different from that in the regular in a regular discriminatory situation the employer always has a legitimate reason. You know in a Batson context the prosecutor always has a facially you know non-discriminatory reason. So I'm just saying in the way I understand voting rights is a discreet act but the other person always has some answer differently and so part of the fact finding is kind of getting unbeneath that. So you're saying this is so different the Supreme Court has so far from the tentative class gate? Well what the Supreme Court has said when you're talking about a legislature not for instance a Batson challenge or individuals but a legislature that this is a heightened standard that is beyond the mere civil context and that's what Feeney said and also Feeney said that discriminatory purpose had to be taken the action had to be because of an effect on race and so this isn't simply an awareness of consequences it had to be done with the intent to suppress minority voting and there's nothing on this record to show that. Also if I can turn to the discriminatory effect claim. Let me ask you a couple of things that aren't really addressed in the brief and that is should we seek more fact-finding from the district court in light of the fact that we did have an election. I know everybody was trying to get this done before the November 2014 gubernatorial etc election that you know got done just before we stayed the injunction so on so forth so the election went forward with under the new rules. Does it matter how that turned out whether that was a disaster or whether it did suppress minority voting or whether everybody just kind of kept on going and these people on the no match list voted in about the same proportion that they ever did etc. I mean does any of that matter? Well Judge Haynes on this record no because what we have is the record as of the trial. No I understand that I'm asking should well may I should say should it matter should we send it back to say all right everybody said all these other elections there were about three elections that it happened there little municipal elections this is not helpful to look at but now we have this great big election I don't think anybody can keep saying this one didn't matter. Should we have the district court take a look at that assuming we go with you on a discriminatory purpose because obviously that's a deal killer for you and we and we have concerns about the effect issue should we send it back for fact findings in light of this election this recent election. I think given the posture of the plaintiffs lawsuit I don't believe that would be appropriate because the record here has been closed now whether there would be any future relief possible in light of that I think would be an issue for a future day. Turning to the section to effect claim here plaintiffs haven't even tried to show a voting disparity and their theory would be unworkable and novel because it would invalidate almost any voting restriction. One more question about later events. Absolutely Judge Hanson. There are several bills pending currently in the Texas legislature that have to do with adding different IDs you know I think there's one about tribal IDs there's one about student IDs there's several out there. What is your sense of whether any of those are going to go forward and whether what impact that might have here in terms of our analysis of this case? Judge Haynes I would not purport to guess as to what the Texas legislature may do in this current legislative session. What I can tell you though is on the section 2 claim here as Clements said there has to be proof that participation in the political process has in fact been depressed among minority citizens and that hasn't been showed. Instead what is in a possession of ID current possession of ID disparity and that's not sufficient. Also there would be constitutional problems if that were the case. Let me ask you another question that's not very well addressed in your brief which is remedy. I know you you don't want to get to remedy because you want to win on merits but if we were to agree with you on discriminatory purpose but disagree with you on one of these others what would be you disagree with the wholesale striking down and a lot of severability and all that what would be an appropriate remedy in your view? An appropriate remedy would be something approaching as applied relief tailored to the violation. So for instance if it was that only means that you know Mr. Benjamin or something can vote. I mean I don't think that's gonna fly. Well if the individual plaintiffs could get relief if there was a showing that there was a broader class that could actually come forward with proof to be able to show that there was a constitutional violation then targeted remedies for instance towards the DPS rules. There's not SB 14 writ large but the DPS rules that are what are imposing the requirement to get a birth certificate for a free voter ID. Why not just allow people to use a voter registration and not the thing that disturbs me about the old laws this idea that you use a utility bill as ID is a little bit I mean questionable. So to to reenact that whole law again to put that back in place as a district court does disturbs me. On the other hand it seems like the the solution would be everybody gets a voter registration card when they register and why isn't that a more concrete form of ID than you know a utility bill. Well what Crawford said is the state has legitimate interest in preventing voter fraud and safeguarding voter confidence by requiring photo ID. Even when there's no evidence in the record of voter fraud of course there is in this and before my time runs out if I can briefly turn to the poll tax claim. This is not a poll tax for three reasons. First, let me stop you there. Madam clerk give Mr. Keller an additional three minutes. We had a lot of questions for you so I don't want you to feel rushed in 15 seconds so you've got three to you know make the other points. I appreciate that Chief Judge Stewart. There are three reasons this is not a poll tax. First of all because SB 14 says that election identification cards will not have a fee charge for them. This is not a standard this doesn't make affluence of the voter or payment of any fee an electoral standard. Anytime there's no charge associated with the card per se it's quote free then any other attendant costs under Crawford you say means those are inconsequential insofar as cost. It would mean that it's not a poll tax. Well that's what I mean. The cost could still go to an as applied unconstitutional. Definitionally you read the Supreme Court's cases to say costs in terms of tax must be directly linked to the photo ID itself. The photo ID itself must cost money and this is at 553 US at 198 Crawford said under the court's reasoning in Harper which was the poll tax case if the state required voters to pay a tax or a fee to obtain a new photo identification and that would be a poll tax under Harper. But Crawford then didn't say that Indiana's voter ID law was a poll tax or even analyze it under the Harper regime even though Indiana charged three to twelve dollars for a birth certificate which was supporting documentation to get that free voter ID and because Crawford applied the Anderson Burdick Burdick balancing test that is direct evidence that Crawford was not considering this to be a poll tax. Indeed that's what the Gonzales Ninth Circuit and bank panel found and no judge accepted the poll tax argument there. And finally again the DPS rules not SB 14 what the legislature did but the DPS rules are what are imposing the requirement to get a. Well why doesn't this legislative session fix the DPS rules. Why are we supposed to fix the DPS rules. And that's what I was asking about this session. Shouldn't they be fixing some of this stuff and why are they wanting to fix it in the court rather than in the legislature where it belongs. Tell the DPS stop doing this thing with whatever they're doing wrong. Well to be clear the DPS has not done anything wrong. SB 14 and DPS rules are valid. Now if the court were why doesn't the legislature provide for a free birth certificate. I mean that what I'm saying is it seems like you've had this opportunity handed to you by virtue of the way things played out in terms of the stay and all of that to fix some of this in a way that would really obviate a good bit of this lawsuit and I don't see why that isn't happening. Well for one Judge Haynes the Texas Legislature only meets six months out of their meeting right now. That is right they are meeting right now. So they've had that opportunity and what are they going to do about it? I can't posture a guess as to what the Texas Legislature will do but here today on this record there's no discriminatory purpose on this record. McCleskey says if you have legitimate reasons and Feeney says you need more than simply an intent of mere awareness of consequences. On the discriminatory effect claim the plaintiff's section 2 claim would be a novel sweeping theory and that isn't right under Clements. On the unconstitutional burden claim their anecdotes and reply brief of pages 12 to 14 address these that they have not shown that any plaintiff is prevented from voting. Well to follow up on Judge Haynes' question though how would an indigent exception obstruct the state's interest? I think basically that's what she was she was getting at. There is evidence in the record and this is it ROA 38993 that the reason the legislature did not include an indigent affidavit was because it said that forgery is easy and it would be hard to trace those elements. So this was again trying to further the purpose of preventing voter fraud and to come to the indigent affidavit itself even under Crawford. Crawford required an indigent affidavit that that would take a second trip to go to a court clerk's office ten days within the election. So while plaintiffs are saying that they have to make multiple trips even in Crawford even in Indiana the indigent affidavit still required a second trip. Chief Judge Stewart I see my time has expired if there are no further questions I'd like to reserve the remainder. All right thank you Ms. Cohen you've reserved rebuttal time to come back up. All right Ms. Flynn from the government either you or Mr. Dunn will get to the three-minute grata so you can determine whether you need it or not. May it please the court Aaron Flynn on behalf of the United States I'll be addressing the discriminatory purpose and discriminatory results findings on behalf of all appellees and Mr. Dunn will address the remaining right to vote and poll tax claims. In separately determining that SB 14 has a discriminatory purpose and a discriminatory result the district court applied established precedent and issued detailed factual findings. Can I ask you something about purpose that wasn't really explored too much in the briefing and that is it seems to me that your argument is trying to have it both ways. It is saying Texas has this hundred something year history or longer than that of discrimination and and terrible conduct most of which time a different party was in control of the then also saying the party that's currently in control of the legislature is the one that sort of evil and wanting to suppress minority voting and it seems like you're trying to have it both ways by both holding the current legislature accountable for a hundred and fifty years and then also accusing this particular party of being the one that's trying to suppress the minority vote when they were not in power for most of those hundred and fifty years so I'm trying to understand how that's logical. With all due respect your honor I don't think that that was the basis the historical discrimination was the basis for the district court's factual finding. It's a good bit of the opinion. It's a good bit of the opinion and that's because the historical discrimination fits both into the first of the Senate factors under the discriminatory results part of the plaintiff's claim and it also fits under the first of the Arlington Heights factors which tells the district court to look at historical background of a decision and the district court here didn't look only at the large historical background and kind of the repeated use of devices that were enacted for the asserted purpose of combating voter fraud but then were found by district courts to repeatedly be used as discriminatory devices especially as there was an emerging minority voting power and so what the district court did here was see this as the sole basis for the discriminatory purpose finding and here the second big part of it that's concerning to me is using the evidence about what the opponents of the law fought the proponents thought mean in this world right now and it's sad our legislators in general not just in Texas but in general have are very polarized and there's a lot of accusations going across party lines and maybe even within party lines of people having sort of bad motives for what they want to do and so to me to credit my thinking that you have a bad motive as some sort of evidence is rather troubling I mean I can I can testify to what you said I'm not saying that and then the judge can believe who they want to believe I'm not talking about that but for me to say I think your motive in being here today is this or that because I'm looking at you and that's what I think that just seems like the rankest kind of speculation to then use as a basis to find that the state of Texas as a whole enacted something with the discriminatory purpose which in my view is a big deal to say and and again your honor what the district court was doing was looking at the specific Arlington Heights factors and contemporaneous statements by the legislative body is a legitimate factor that the Supreme Court has directed the and saying well I felt like I was being marginalized or I was being shoved aside or you know I felt like this was this or that that's what the focus of the opinion was on it wasn't on the House floor senator so-and-so says one thing and senator somebody else says something else what the court was trying to do is look at this legislative process and it was true that the people who took the stand in the case were opponents of SB 14 but the court wasn't looking at their and be the sole basis of the discriminatory purpose finding what their statements did was explain how this process played out and explain that they were repeatedly bringing to the legislature's attention the fact that the ID requirements and the lack of ameliorative provisions were going to have an adverse effect on african-american and hispanic voters and given that that was the crux of the purpose claim and really explains the motive and the intent behind the legislature taking this action and really stripping the provisions that they said that they were relying on in the Indiana legislation in the Georgia legislation as models was certainly something that the district court could take into consideration and again what the court did was a careful application of Arlington Heights and Feeney and looked at a lot of different evidence to find that the purpose which could be one part of the purpose which is racially discriminatory purpose of attempting to African-american and Hispanic voters given the seismic demographic shift that had occurred in Texas's population over the past 10 years combined with the fact of extremely racially polarized voting which meant that any reduction in African really true on the Hispanic vote I mean the most recent election it was not nearly as polarized as you contend it was in terms of the governor race for example it's uncontested your honor that there's racially polarized voting in every county across Texas and it's true that the Anglo vote no it's true that the Anglo vote and the African-american vote have the largest disparity in terms of voting preferences but it's true also as to the Anglo vote and the Hispanic vote in Texas I mean it seems that these are being sort of put in the same bucket without any analysis of whether that's an appropriate way to look at it because as I appreciate the demographic demographic shift it has been largely in the Hispanic voting population and the voting disparities there are a different analysis than the African-american disparities I'm not saying this justifies any wrongdoing in any way that's not my point my point is if we're just looking at effects we're trying to make an analysis of what's causing what is it appropriate really to just put everything in one bucket rather than looking at it more spread out and trying to analyze it more in a more nuanced fashion and your honor the district court made the finding that there's racially polarized voting and that finding isn't contested by Texas and it rests on not simply African-americans and Hispanics are voting differently in one or two elections but on consistent findings by district courts in the Supreme Court that racially polarized voting exists across the state and in Dr. Burden's report and we include the citations to all of the reports in the addendum in our brief he looked at ten years worth of elections in Texas and it was through looking at those specific elections that they came to the finding that racially polarized voting exists and and it's not for this court to revisit the findings on appeal but rather to look at what are the subsidiary findings under clear our review did the district court air in clearly air in making those findings and in using those findings to support the ultimate finding that SB 14 was enacted with discriminatory purpose and here we would submit that there is no clear error and that Texas's arguments can best be understood as an attempt to relitigate these issues on appeal the district court properly applied all of the Arlington Heights factors it made the finding under Feeney that SB 14 was enacted because of and not merely in its adverse effects on the African-American and Hispanic electorate and it looked to the state under Hunter v Underwood as the burden was shifted to provide it with a clear explanation of how it was that it wasn't simply a voter ID law that was enacted but why it was that SB 14 was enacted and why it was that the legislature stripped the non photo ID provisions even though in 2005 2007 and 2009 they had said that those non photo ID provisions increase the security of the ballot without disenfranchising African-American and Hispanic voters are you the remedy person or is that your colleague I can address remedy because it seems to me there was and I understand the discriminatory purpose would be a different category but let's look at just the rest and let's put that aside for the moment it seemed to me the remedy made no effort whatsoever to read to show any deference to the legislature or to retain anything of what was trying to be done why wouldn't the remedy of simply reinstating the voter registration card as a proper method of identification and not the utility bill and whatever else was out there why wouldn't that be enough to cure the problem because when you register to vote you get your registration card it's free it seems to address all the concerns you have and it's a more solid piece of ID in my view for what it's worth than a utility bill so why wouldn't that have been a more nuanced approach right and and just to be clear we're talking only about the discriminatory results remedies to discriminatory results because it's a purpose right but it's a purpose so as for the results it was sensible for the district court to reinstate pre-existing law and it wasn't for the district court to strip a provision of pre-existing law that the Texas legislature itself had decided was appropriate where a person failed to present a voter registration certificate so that the way the pre-existing law worked was that if you showed up to the polls you were to present your voter registration certificate which was issued by the Secretary of State upon any applicant successfully registering to vote and that was mailed to the voter so it's different from the type of burdens that we have here right and it's a much more as a result solid piece of identification so why couldn't the simply say you know I'm going to enjoin da da da instead of saying we just reinstate the whole law reinstate that piece I mean that seems to me to be the the thing that's the easiest to get and yet much more solid than a random you know this or that or an ID issued by some a place that we don't know who they are etc I mean it just seems more solid and that would seem to solve the problem rather than completely invalidating everything but again this was this was simply reinstating a validly enacted law it was Texas's pre-existing voter registration no difference at all to this act no but it showed complete deference to the legislature in terms of what it had previously said was sufficient to protect the ballot and that the district court deferred to the legislature and said this is what I'm reinstating this was a validly enacted law it wasn't challenged under section 2 it we're not saying that it was discriminatory it's a voter ID requirement and to the extent that the legislature wants to take steps it's not required to act as in a redistricting case where you would need to do something but to the extent that the legislature wants to take steps it can do so it can determine how it wants to expand the ID list it can determine if it wants to entrust the Secretary of as opposed to DPS it can require it can determine if it wants to change the provisional ballot procedures so there are a host of ameliorative options that the state had available to itself and that was the same let me shift you I hate to cut you off but that sentence look like it didn't have a period anywhere let me just shift you let's talk about the poll tax your honor the Crawford okay so we don't have a Crawford right to vote claim but I will say that in terms of Crawford's relevance to the discriminatory purpose and the discriminatory results claims that Crawford didn't have race-based claims and so the Supreme Court in that case never had an opportunity to apply the totality of circumstances Senate factors analysis that the district court here applied as to its finding that there's a discriminatory result nor is it the government's view this is a fact-driven case yes we're here on clear error review so we understand that and we understand there's what a hundred page opinion and you know they're umpteen experts experts in categories I didn't even know existed as a matter of fact but you know but I mean it's unlike Crawford where the court judge district judge Barker found the expert testimony to be woeful and and a lot of other words here I mean there's a ton of expert evidence and so we understand clear on those fact but there's some overarching legal issues seemingly permeating of course it's axiomatic if the district courts fact findings are tied to erroneous legal thoughts doesn't matter so I just want to be clear on the issue you have you've bringing deference to the trial court yada yada that is the bell whether you're home but you know the state comes at it to say well it's that's not it a there are some erroneous findings but be the district court is not focused in on what sprinkled so so I just want to be sure I'm clear on what the government I mean we hear you about deference to the trial court but you know the state makes strong arguments in terms of the legal issue so what's the overarching legal issue that you say the district courts fact findings are appended to such that the state's argument has no no no no dispositive force you understand the thrust of my question yes I understand what color that light is and you heard me what I thought so as to as to purpose a state can obviously does have a legitimate purpose in addressing voter fraud and increasing electoral confidence but all of the findings in this case pointed away from SB 14 achieving those purposes and it was certainly within the district courts province to look behind the stated legislative purpose on a discriminate in examine the provisions that the state actually enacted and whether or not they were furthering the asserted justifications and as to the purpose issue I do want to be clear that the state has repeatedly said that there's an increased burden on plaintiffs under a racial discrimination claim when you're attempting to show that the legislature was enacting a law with discriminatory intent and whether it's been the Supreme Court's decision in Arlington Heights the court's decision in Hunter v Underwood the decision in this court's decision in Brown and the decision in price all of those cases have looked at this on a preponderance of the evidence standard it isn't an increased standard and all of the cases that the state sites really go to ex post facto delineations between civil and criminal penalties and aren't cases that go to racially discriminatory intent and Kleski which the state relied on today the crux of the McCluskey holding about Georgia's death penalty system was that the plaintiffs hadn't shown discriminatory impact and hadn't shown other discriminatory evidence of discriminatory intent and therefore the district court accepted the legislature's stated opinions as to the intent finding just to the effects finding just to cover that quickly the state heavily relies on Crawford Crawford isn't a blank check for state legislatures to enact laws that have a discriminatory effect on minority voters here SB 14 there's I ask you shouldn't we look at this last election this is a good example it's a full bore statewide gubernatorial senatorial all of the toriel election in 2014 and wouldn't that be relevant to the question of whether really certain people's voting rights were suppressed or certain groups no your honor we don't think there needs to be a remand in this case while turnout can certainly be relevant it's not dispositive as to the results determination just turn out but but were people having trouble I mean this was a full you know fully litigated if you will election fully contested it isn't this you know sleepy thing in a town that no one cares about so wouldn't this be a good exemplar to say were there in fact problems we don't have to guess anymore and wouldn't that be better served to go back to the district court and have a district court take a look at that no your honor the parties here in the state isn't asking for the remand in this case either the parties all proceeded with discovery in this case in order to have this case fully litigated the remedy has not gone into place because of this day and it shouldn't be that going forward african-american and hispanic voters have to continue to vote under discriminatory law that's found both to be intentionally discriminatory and to have a discriminatory effect and all of the expert evidence in the case certainly supports the findings that this placed significant material burdens on african-american and hispanic voters the individual plaintiffs in the case had difficulty voting and were unable to cast ballots under the in the three elections in which they attempted to vote and the social service providers in this case their evidence also supports the district court's findings and there's reasons why turnout hasn't been incorporated as a requirement in the section 2 effects analysis and that's because it's not a good proxy for identifying how burden the requirements are the extraordinary as you said hoops that people will have to jump through in order to get SB 14 ID and it doesn't an the depressive and suppressant effects the deterrent and suppressive effects that a voter ID law has with respect to those voters who can no longer or have extreme burdens that they have to meet to continually exercise their right to vote and I realize I'm way over my time unless there are further questions we're happy to rest on our briefs which address all of the state's claimed to legal errors in detail thank you here for mr. done may please the court my name is Chad done I'm arguing today on behalf of the private plaintiffs and private plaintiff intervenors and I'll be addressing the right to vote and the poll tax claim before I get to those issues though I'd like to address judge Haines's question on the issue of remand and first I would note that cases such as these there's always an election coming up so at some point the record needs to be final no I agree but the problem that I see is it seemed like everyone or at least the district court and in your side kind of discounted these other elections that had occurred under SB 14 is saying well they were just a small municipal election or a this or that you know they're just kind of not a big thing and now for better for worse we've had the big thing and that's why I'm saying would that be I mean whether it should have occurred as it did or not it did and therefore should shouldn't that be something that's considered because it seemed like the evidence about the other elections which is discounted because they were viewed as not being sort of fully engaging kind of elections what we had a fully engaging kind of election in November 2014 and that's why I'm asking that well first I think it was a very low turnout historically this recent election so I think you would have the same arguments that it still wasn't a high turnout election as a confident as I am that that record would ultimately demonstrate what a disaster this law was for both these plaintiffs and thousands of other voters I don't think it changes the analysis this court needs to make now and given that there are elections coming up this month and and primary elections coming up in March of the early of next year it's important to get finality of this decision and of course for either party to get appellate review the final thing I'll say on that subject is that in the event this court chooses to affirm some or all of the district court's opinion as we urge that all of it should be then on remand the district judge can craft can accept additional evidence about what happened in the election and determine whether some changes to a remedy are necessary and that's why I want to address judge Haines your other question about remedy in this case of course we agree with the United States that if this law is affected with a discriminatory purpose it's entitled to no deference at all and the Supreme Court has said that time and again and that's why the district court didn't go through the painful task of building a more detailed remedy on an as-applied challenge but what the district court says in the last page of its opinion is that that may be necessary and so this court merely needs to find the liability side of the case and then remain the case your argument is if we were to find that discriminatory purpose wasn't properly found or some there's some problem with how the district court went about that then even if we were to agree with the district court on something else you're saying at that point we would remand for a remedy a more nuanced remedy as I'm calling it yes which maybe would include just reinstating the voter registration instead of the utility bill okay exactly and that gets to I sort of have two responses to that first the district courts in the best position to look at the facts on the ground take additional remedy evidence if necessary look at this recent election and then craft proposals as to how an as-applied remedy would work but ultimately as the case law dictates it's not really for the courts to start legislating it's for the legislature I mean to me it just seems like you've had this case you've had this ruling from this district judge it stayed at the time but you don't know how the Fifth Circuit you that lets this legislature you don't have a fifth circuits gonna rule or the Supreme Court why wouldn't there be efforts to you know fix if there's a perceived problem or kind of head off the issue and I noticed that there are a lot of bills pending I don't know you know I don't know where they're going do you have any insights to that well what I would say is I can't figure out why the legislature wouldn't have a past many of these ameliorative amendments when Senate bill 14 was originally debated and it's apparent that it is going to take the federal court system to direct the legislature to comply with the with the boundaries of the US Constitution and that's what happened was this was struck down and so it wasn't like the court really gave the legislature because the legislature wants to do a photo ID of some sort and that that wasn't answered by this case and so now you've still got putting aside the issue of it having to come back to this judge or not you still got the legislature just kind of having to I don't know just try again maybe now if they throw in the student IDs will that work or what if it you know so that's why I'm saying I don't know that we have given the legislature a lot of guidance other than to say you mess this up that's what the district court may say you messed it up it was I don't know that that was a lot of guidance well I think that I think the reason your honor may be uncomfortable at this point is that the discriminatory finding has told the legislature that their law is entitled to no difference and now what the legislature needs to do is go clean out the stalls start the process over accept the testimony have a lot of the same people there I mean they can't well I don't mean individuals new discriminated on purpose they're still there well there are steps and of course the Arlington Heights factors demonstrate what various steps the legislature can take to ensure that its process isn't infected with discriminatory purpose have an open hearing follow the regular legislative debate events like these inform that but even if there's a lot of weird I mean the frankly the Affordable Health Care Act was passed in a fairly unusual way to avoid what had happened in the interim after the Senate bill was Pat was passed went to the house there was a change in the Senate composition and so we didn't say I mean nobody has said well therefore that bill should be struck down or whatever because it was kind of a strange legislative situation that happened no one's even suggested that well you didn't to me it seems this idea that while people kind of maneuver in the well of a house or Senate that's kind of how it's done apparently I'm not an expert on it but that's how it's done in legislation after legislation I don't see why that would invalidate it well with all due respect that's not how it's been historically done in Texas but again that's why it's only one element to the test and there's no evidence in the Affordable Care Act was structured in such a way to benefit or harm certain segments of the population you didn't have the scores of other legislative testimony there's a lot there to the intent piece but obviously what I should turn to now let me pull you back to this record all right what's here I guess you get the magic of the three since the government was trying to get away as quick as she could I'll give you the three no she didn't really she answered the poll tax all right so in the poll tax claim the the Constitution says a poll tax or any tax and here the legislature crafted a situation where the only way you can get a so-called free EIC which incidentally is only use profits a free is free well I'm sorry Crawford did not present a poll tax claim so there's no decision in that case it's binding in this court as it relates to poll tax and the balance of the decisions throughout the country are in favor of the plaintiffs and in fact if there's any decision that of the Supreme Court on this matter that's dispositive it's the Harmon decision and in Harmon they were faced with a poll tax or if you wanted to avoid the poll tax you could submit an affidavit within I read plenty in preparation for this the same suggests at least that you know if the cost is not the ID itself even though Santa Rica like this there's plenty of testimony about you know no DPS offices within you know a hundred miles of the border and you know people having to drive and take off work etc etc if you put a calculator that that would be you know a fair sum of money but at least I don't claim to have a handle on it all but I've sure read enough of these these cases and it seems the augury is free is free you know if it's the cost isn't associated with the ID itself what do you do with these ancillary costs you say that's not what Crawford in these case at least intimate Harmon found a poll tax violation and there was no requirement to pay any money and Harmon you either paid the poll tax or you could fill out an affidavit and the court said the affidavit is still a 24th Amendment violation because we're not going to tolerate in runs around the poll tax prohibition in the Constitution and that's exactly what the state did here it said you have to pay $2 to get the document at the minimum but might already have a birth certificate in your house so it's it didn't require that you go get pay something to get a birth certificate but for so many Texans of greater than six hundred thousand we know we'll have to go spend this money for example we don't know that we don't have a birth certificate sitting in their file drawer at home we know that Floyd Carrier has spent more than $100 and it was unable to get a birth certificate we know that loud on Estrada whole tax does it that would be the as applied so then mr. Carrier gets his relief exactly and all we've asked for on the poll tax claim is an ad as applied remedy and that's all the the final thing I'd like to mention on here is the right to vote claim obviously Crawford didn't decide as the state suggests that every photo ID law is constitutional taking the state's reading of Crawford means that people can erect photo identification requirements requiring you to travel to the state capital for example to get your identification there is a line there and the way we discover that line is we balance the legitimacy and strength of the government's interest with the character and magnitude of the and we determine whether that burden is necessary to meet those interests and the district court decided as a matter of fact that the burdens were substantial in this case in fact as close to severe as you can get before triggering strict scrutiny and that the individual picking and choosing in Senate bill 14 the individual requirements there did not meet up with what it termed were legitimate state interest the legitimate interest that were recognized in Crawford what I would say in final is that this this court has a storied history of protecting the right to vote this case comes on the heels of an extensive record an extensive fact-finding by a district court and an extensive opinion it is the tide has turned on photo ID cases in general but this has to be the backstop what Texas has done here is more severe than any other Union in the nation the district courts entitled to affirmation that these plaintiffs are entitled to a remedy we ask for thank you thank you mr. Dunn Mr. Keller we're back to you on the boat first of all our brief at page 9 and pages 20 to 21 we show that plaintiffs experts and their organizations couldn't find a single voter who could not vote because of SB 14 mr. Carrier can vote by mail without a photo ID and that shows that with the mail I think it you know it really does take away something that's very I know there are a lot of strong long traditions in Texas of kind of like leading church and getting together and drug caravanning over to the polls and that kind of thing and I don't know why that isn't worth protecting or you're just saying that federal legislation doesn't protect it in other words that if people would prefer to vote in person because they want help or because they feel that's more meaningful than entrusting their poll their ballot to the mail that that isn't what section 2 is about there is no constitutional right to vote in person states like for instance Oregon Washington have universal mail voting that is constitutional and Burdick says that the states have the ability to set the time place manner of their elections per the Elections Clause of the Constitution if I can turn to some of the opponents statements we heard about some of the contemporaneous statements senator Ellis an opponent of the bill said that he knew SB 14 sponsors intent that sponsor was that everyone could exercise their right to vote that's a 27606 that's contemporaneous evidence that the legislature did not have a discriminatory purpose senator Davis again an opponent said that no member made a statement indicating they supported SB 14 to disadvantage minority voters that's at 99655 those opponents statements confirm that there's no discriminatory purpose here we do dispute that racially polarized voting was proven that's a reply brief at pages 25 to 27 if you have a view on this issue of whether there should be any separating out the racially polarized voting by type of voter well first of all I would say that racially polarized voting isn't even relevant to a vote denial claim it's relevant for vote dilution claims because you're checking to see about the efficacy of a vote already cast we're talking about vote denial it doesn't matter after the racially polarized voting so I don't think the court has to reach that in this case judge Haynes if I can address some of your remedial points as applied relief whether that would be something along the lines of and again this is under the assumption that you would find it as applied violation we maintain there is no violation here but if you were to find one reinstating some of those provisions for instance for indigent voters or something along the lines of an indigent affidavit or something along the lines targeting the voter ID in 2014 the Texas legislature made the legitimate determination that it wanted a photo ID for its voter ID and Crawford said that's legitimate and you just heard my friend on the other side say that there has to be a nexus to find that laws are necessary to further the state's interest that's not what Crawford said what Crawford said is you have to examine them and balance the legitimate state interest of preventing voter fraud and safeguarding voter confidence and that has to be balanced against what are the burdens of actually obtaining that ID well for one the district court completely ignored a very key passage in Crawford and this is a 198 which said the inconveniences of making a trip to the BMV or gathering the required documents this is quoting the Supreme Court surely does not qualify as a substantial burden on the right to vote or even represent a significant increase over the usual burdens of voting unquote that's a legislative fact that Crawford held that's not subject then to future debates on records now for a certain subset of voters for instance if it really were the case that a voter had to travel from El Paso to the capital to Austin and that's how to get a voter ID that would be a great case for an as-applied challenge but there's nothing close to that on this record instead what we have here are people who are able to vote and yes there's some testimony particularly from some over 65 that they did have difficulties in obtaining birth certificates but first of all that doesn't mean wholesale facial invalidation is proper and even for those particular voters they could still vote by mail without photo voter ID you agree that if we end up reversing the district court on discriminatory purpose but finding that there is accuracy to some of the other factual findings that we should remand for remedy it would be proper for the court to do that the court also in the first instance could craft its own remedy tailored to the as-applied violation okay and is it your position that some of the evidence upon which the district court relied was in inappropriate like the opponent's statements and so if we were to agree with that then we would send it back for the court to consider without those yes there were some clearly erroneous findings by the district court some also were legally insufficient to support the ruling and insofar as any of that evidence could not be used and should not have been used then yes that would be an appropriate basis also to remand as well one one final declarative sentence if you wanted to sum up there has been no showing of any voter not being able to vote because of SB 14 and that forecloses the section 2 effects claim that forecloses the purpose finding and this is nothing close to a poll tax thank you just all right thank you mr. Carroll thank you for all counsel for the briefing and argument to be submitted while we reconstitute we're going to take a short 10-minute recess while other council